**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00015-SBP

BRANDON WALTON,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, ALEXANDER JAMSA, CASEY MEYER

    Defendants.

---

### DEFENDANT CITY AND COUNTY OF DENVER'S MOTION TO DISMISS

---

Defendant City and County of Denver ("Denver"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves the Court to dismiss all claims asserted against Denver herein.

### Certificate of Conferral, Pursuant to D.C.Colo.LCiv.R 7.1(b)(1):

Undersigned counsel conferred with Plaintiffs' counsel regarding the relief sought herein. Plaintiff opposes this Motion.

### Notice of Non-Use of Generative Artificial Intelligence:

Pursuant to this Court's Standing Order, Re: Use of AI in Filings, undersigned counsel certifies no generative artificial intelligence was used in the preparation of this Motion.

### INTRODUCTION

Plaintiff alleges on January 1, 2023, while in the custody of the Denver Sheriff Department ("DSD"), he was assaulted by one of the individual Defendant deputies while the other looked on.

Plaintiff asserts claims of excessive force and a failure to intervene against the individual Defendants. In addition, Plaintiff asserts a § 1983 *Monell* claim against Denver for an alleged failure to train and supervise the individual Defendant deputies. The Complaint and Jury Demand, ([Doc. 1], "Complaint"), fails to state a claim upon which relief may be granted because it lacks a sufficient factual basis for a failure to train or supervise claim, lacks a factual basis for a finding of deliberate indifference, and fails to establish a causal link between the alleged constitutional violation and the alleged lack of training. As such, the Complaint should be dismissed.

## **FACTUAL BACKGROUND**[1]

Plaintiff alleges he was in the custody of DSD on December 30, 2022, after an arrest for trying to enter apartment units which were not his own. [Doc. 1, at ¶ 13]. The Complaint asserts he was initially taken to Denver Health Medical Center ("Denver Health") for treatment before DSD transported him to their detention center medical unit on December 31, 2022. *Id*. at ¶ 16-17. Plaintiff claims DSD staff returned him to Denver Health again early in the morning on January 1, 2023, for an issue related to his catheter. *Id*. at ¶ 18. Plaintiff asserts the individually named Defendants, DSD sheriff deputies Jamsa and Meyer, ("Deputy Defendants") were providing "watch duties" over Plaintiff for eventual return transport. *Id*. at ¶ 21. It is alleged Plaintiff suddenly awoke while in the hospital bed and was disoriented. *Id*. at ¶ 22. Plaintiff claims at that time he began to experience a "physical or psychiatric medical issue" which caused his arms and legs to begin to "spasm uncontrollably" and "flail in the air." *Id*. at ¶¶ 23, 32. He further asserts that the movement of his limbs was involuntary, and that he was not attempting to hit, kick or

---

[1] Denver accepts as true the referenced allegations in the Complaint solely for the purposes of this Motion.

2

strike anyone. *Id*. at ¶¶ 29, 31. Nonetheless, Plaintiff claims one of the Deputy Defendants responded by punching Plaintiff in the face three times, while the other Deputy Defendant took no action and looked on. *Id*. at ¶ 33.

With respect to Denver, Plaintiff alleges Denver should have trained or supervised the Deputy Defendants so that they would understand the difference between an involuntary spasm and a threatening action by another person. *Id*. at ¶ 39. Plaintiff further alleges Denver failed to train the Deputy Defendants to be able to distinguish between involuntary movements versus movements intended to create an imminent threat. *Id*. at ¶¶ 41, 43, 44, 46. Plaintiff contends the training was necessary to prevent constitutional violations caused from deputies not having a basic awareness of medical issues. *Id*. at ¶ 47. Plaintiff claims Denver's failure to provide the above-referenced training led to a violation of his constitutional rights. *Id*. at ¶ 92. In sum, these alleged failures form the basis of Plaintiff's municipal liability (*Monell)* claim.

Plaintiff's allegations against Denver do not plausibly plead a *Monell* claim for failure to train or supervise. The allegations are conclusory and fail to set forth what *specific* training Denver provided or failed to provide to the Deputy Defendants, or how it was inadequate. Nor does Plaintiff's Complaint demonstrate deliberate indifference in any way. Further, there is no alleged causal link between the alleged excessive force/failure to intervene and the allegedly inadequate training. Importantly, Denver cannot be sued under the theory of *respondeat superior* for the actions or inactions of the Deputy Defendants. As such, Denver should be dismissed from the case.

## STANDARD OF REVIEW

"To survive a motion to dismiss for failure to state a claim upon which relief can be given, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

3

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should disregard conclusory allegations and look only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

Although a municipality's failure to train its employees may support a *Monell* claim, this theory represents the most "tenuous" sort of municipal liability under § 1983. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). The inquiry in these cases is whether the plaintiff has adduced sufficient facts to demonstrate: (1) the training at issue was inadequate; (2) the inadequate training demonstrates deliberate indifference by the city; and (3) a direct causal link between the constitutional deprivation and the inadequate training. *See, e.g., Trujillo v. Campbell*, No. 09-03011-CMA-KLM, 2012 WL 3609747, at *6 (D. Colo. Aug. 22, 2012). Here the Complaint fails to adduce *any* proper factual allegations demonstrating Denver's liability for a failure to train.

### I. There Are No Factual Allegations Pled to Establish a Specific Training Deficiency, Only Naked Assertions

To establish the first element of his claim, Plaintiff must prove Denver's training was, in fact, inadequate. *See Brown v. Gray,* 227 F.3d 1278, 1286 (10th Cir. 2000); *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010) ("plaintiff must identify a specific deficiency. . .") (quoting *Lopez v. LeMaster,* 172 F.3d 756, 760 (10th Cir. 1999)). More specifically, he must "identify *how* [the] training was inadequate." *Hughes v. Kvasnicka*, 2014 WL 36627, at *4 (D. Colo. Jan. 6,

4

2014); *Tivis v. City of Colo. Springs*, No. 19-cv-867-KMT, 2020 WL 1166842, at *5 (D. Colo. Mar. 11, 2020) (motion to dismiss granted, in part, as to failure to train claim, where "[p]laintiff does not proffer any facts regarding the officers' training or supervision—when it occurred, who conducted it, or how it was deficient"); *Bark v. Chacon*, No. 10-CV-01570-WYD-MJW, 2011 WL 1884691, at *3–4 (D. Colo. May 18, 2011) ("Mere conclusory allegations that an officer or group of officers are unsatisfactorily trained will not 'suffice to fasten liability on the city.'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989)).

In the Complaint, after detailing the alleged circumstances surrounding the incident, Plaintiff asserts several theoretical propositions about how he contends "any reasonable officer" in the Deputy Defendants' position should have been trained to understand or recognize (when Plaintiff was experiencing this spasmatic episode in front of them) in order to differentiate unlawful conduct possibly requiring some use of force from an uncontrolled medical issue where such force is likely not warranted. [Doc. 1, at ¶¶ 39-44]. For example, he asserts "any" reasonable officer should be trained to: "understand that pretrial inmates brought to the hospital may be suffering similar health conditions and may experience involuntary spasms and/or movements that should not be interpreted as threats." *Id.* at ¶ 39; "distinguish involuntary movements from voluntary ones." *Id.* at ¶ 40; and "distinguish movements indicative of an imminent threat from those that were not." *Id.* at ¶ 41. At the end of this list of alleged training needs, Plaintiff merely concludes, "Denver did not provide the above-described training, education, or supervision to the Defendant officers." *Id.* at ¶ 46.

These claimed training deficiencies are "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted). Plaintiff merely sets forth bare

5

allegations of Denver's training deficiencies, devoid of any actual factual development, which only attempt to support his claim for relief. Nowhere does the Complaint set forth exactly what training the Deputy Defendants received, nor how that training was purportedly deficient. Simply claiming that "Denver did not provide" certain theoretical training without any supporting facts is conclusory, self-serving, and should be disregarded. *Khalik*, 671 F.3d at 1191. Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* In this case, Plaintiff merely repeats the same conclusory allegations contained in the Factual Background section of the Complaint into his Second Claim for Relief (The *Monell* claim against Denver) and nowhere establishes the elements of Denver's municipal liability. [Doc. 1, at ¶¶ 39-47, 82-90].

While the Complaint does generically allege that the Deputy Defendants were not trained on use of force concepts specifically applicable to Plaintiff's alleged circumstances, such allegations are insufficient to establish that the specific training provided by Denver was deficient. *Bark*, 2011 WL 1884691, at *3 ("While Plaintiff generally alleges that the City and County have not properly trained or supervised the individual Defendants with respect to certain tasks such as obtaining search warrants, recognizing exigent circumstances, giving *Miranda* warnings, questioning suspects, as well as concepts of reasonable suspicion and probable cause, he fails to allege specific deficiencies in training and supervision, or explain how the incident described in the Amended Complaint could have been avoided with different or better training and supervision."). The Complaint claims Plaintiff was "experiencing some sort of physical or psychiatric medical issue" and asserts there existed no legal "justification for either forcefully punching him in the face three times or allowing a colleague to do so." [Doc. 1, at ¶¶ 24-32, 45].

6

But the Complaint does not and cannot articulate how such alleged unlawful conduct visited upon him by the Deputy Defendants could have been avoided with some alleged proper training or supervision.

The conclusory allegations detailing seemingly relevant training concepts which Plaintiff asserts Denver failed to train or supervise the Deputy Defendants on, also, do not address what training they did receive for such situations to properly demonstrate that such allegedly needed training was lacking or entirely absent from relevant training. [Doc. 1, at ¶¶ 39-47]. That level of specificity is required to adequately plead a *Monell* claim for lack of training or supervision, but the Complaint lacks such proper factual allegations. *Tivis,* 2020 WL 1166842, at *5.

The failure to train claim should be dismissed for its mere conclusory allegations, and failing to properly plead the specific training received by the Deputy Defendants, how that training was allegedly deficient, and how it may have prevented the claimed constitutional harms.

**II.   Plaintiff Pleads No Facts to Establish Deliberate Indifference by Denver**

Plaintiff has pled *no* factual allegations which show "the inadequate training demonstrates deliberate indifference by the city." *Trujillo*, 2012 WL 3609747, at *6. "A *pattern of similar constitutional violations* by *untrained* employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (emphasis added); *Est. of Waterhouse v. City of Lakewood*, No. 21-cv-00982-KLM, 2022 WL 2753434, at *11 (D. Colo. July 14, 2022). Plaintiff points to no comparable situation that was caused by the same alleged training failure – i.e. failure to train on proper identification of and responses to an inmate experiencing some obvious medical episode of involuntary muscle spasms. Since there is no allegation of any other use of force – let alone any impropriety – by any other

7

DSD employee in response to such a medical episode, Plaintiff cannot proceed on such a pattern of violations theory here, whether for purposes of showing a "widespread practice" or "notice" to Denver. *See, e.g., Simmons v. Hinton,* No. 13-cv-2566-CMA-MJW, 2015 WL 1041583, at **8-9 (D. Colo. Mar. 5, 2015) (no failure-to-train claim for use of taser, despite absence of live scenario training and plaintiff expert report which asserted specific deficiencies).

Although inapplicable here, a failure-to-train claim need not be based on a "pattern of violations" but may occasionally rest on a "single incident" of unconstitutional activity. In these cases, liability can only attach in the "narrow range of circumstances" from which constitutional violations are a "highly predictable consequence" of the alleged failure(s). *Connick*, 563 U.S. at 63-4 (quoting *Commrs. of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). Put differently, there exists the chance, "*however rare*, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64 (emphasis added)). As the Tenth Circuit recently noted, the plaintiff in these cases must carry a "demanding burden." *Valdez v. Macdonald,* 66 F.4th 796, 813 (10th Cir. 2023); *Bark*, 2011 WL 1884691, at *3.

Here, Plaintiff fails to plausibly plead, in any fashion, how the asserted lack of training or supervision to address the circumstances surrounding his alleged constitutional violations (of such claimed excessive force conduct resulting in a broken nose, seemingly lacking any justification) could be a highly predictable consequence if Denver did not train its deputies better in handling a *very specific* acute medical episode in a hospital setting. *Connick*, 563 U.S. at 63-4.

8

Because Plaintiff fails to allege any deliberate indifference, does not identify another similar situation, nor demonstrates it is an applicable single incident exception, he has not shown this element, and the claim should be dismissed.

### III. There Is No Direct Causal Link Between the Excessive Force and the Failure to Train Claim

Plaintiff has failed to plausibly plead facts which demonstrate a direct causal link between the constitutional deprivation and the inadequate training. *Trujillo,* 2012 WL 3609747, at *6. Under § 1983, a municipality is not liable for the actions of its employees under the doctrine of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom...inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

In the Complaint, after setting forth the factual allegations for the excessive force claim against the Deputy Defendants, Plaintiff proceeds to allege that the lack of training (or supervision) by Denver caused the deputies to misread Plaintiff's behavior as something requiring use of force to stop versus recognizing a medical issue requiring other responses. [Doc. 1, at ¶¶ 39-46]. "It is obvious that such training is and was needed to prevent constitutional deprivations and that when

9

officers are not trained to have basic awareness of these types of medical issues, officers are likely to misunderstand and misperceive such conduct." *Id.* at ¶ 47. This is conclusory. Nor does the Complaint set forth facts to demonstrate that the alleged constitutional violations arose from a training deficiency. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program...." *Bark,* 2011 WL 1884691, at *3 (quoting *Harris*, 489 U.S. at 390-91).

Even accepting the Complaint's pleadings concerning the excessive force allegations as true (as the Court must do in deciding this motion) and solely for the purposes of these arguments,[2] a lack of training or supervision is certainly not the only factor which may have caused any alleged deputy misconduct here. *Iqbal*, 556 U.S. at 678; *Bark,* 2011 WL 1884691, at *3. The alleged misconduct, as pled, concerns individual action(s) asserted as lacking *any* justification in response to Plaintiff "clearly experiencing some sort of physical or psychiatric medical issue." [Doc. 1, at ¶¶ 45, 47]. Such allegations implicate other possible causes and liability not attributable to the theoretical lack of training or supervision by Denver (concerning appropriate deputy interactions with inmates while in a hospital setting), and it does not satisfy the special rigor applied to this causation element for a plausible claim against Denver. *Waller*, 932 F.3d at 1284; *See also Bark,* 2011 WL 1884691, at *3. Moreover, Plaintiff also alleges violations of DSD policy related to incident reporting and body worn camera activation which also do not necessarily support a causal

---

[2] Contemporaneous with this filing, Deputy Defendants file their Answer to the Complaint denying Plaintiff's allegations against them. *See* Defendants Jamsa and Meyer's Answer to Complaint.

connection to any alleged lack of training or supervision claim against Denver, either. [Doc. 1, at ¶¶ 50-52]. To the contrary, those allegations infer Denver's policies and practices (such as incident reporting and recording requirements) existed to allow DSD to review and provide additional supervision over the conduct occurring between deputies and inmates to ensure compliance with its policies, practices, and training. *Id.*

Resultingly, no allegations, even by fair inference, meet the rigorous causation requirement needed for Denver's liability here, for other equally if not more plausible causal factors may be the reason for Plaintiff's alleged harms. *Waller*, 932 F.3d at 1284; *Bark,* 2011 WL 1884691, at *3. The *Monell* claim against Denver must also be dismissed in the absence of a direct causal link to Denver, needed for the asserted lack of training or supervision.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Denver respectfully requests that the Court find that Plaintiff has failed to state any claim upon which relief can be granted against Denver and dismiss the *Monell* claim against Denver, pursuant to Fed. R. Civ. P. 12(b)(6), and grant any other appropriate relief to Denver which the Court may deem appropriate.

Dated this 31st day of March, 2025.

    Respectfully submitted by,

    s/ *Kevin Sobczyk*
    Kevin Sobczyk, Esq.
    Assistant City Attorney's
    Denver City Attorney's Office
    Civil Litigation Section

> 201 W. Colfax Avenue, Dept. 1108
> Denver, Colorado 80202-5332
> Telephone: 720-913-3100
> Facsimile: 720-913-3155
> E-mail: kevin.sobczyk@denvergov.org
> *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

 I hereby certify that on this 31st day of March, 2025, the foregoing **DEFENDANT CITY AND COUNTY OF DENVER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed with the Clerk of the Court via the CM/ECF system which will send a notification of such filing to the following:

Raymond K. Bryant, Esq.
CIVIL RIGHTS LITIGATION GROUP
raymond@rightslitigation.com
*Attorney for Plaintiff*

                *s/ Kevin Sobczyk*
                Denver City Attorney's Office